UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

                                            Case No. 13-cr-20772
vs.                                       HON. GERSHWIN A. DRAIN

RASMIEH ODEH,

        Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT [#84], FINDING DEFENDANT'S MOTION TO PRODUCE ALL RECORDS OF THE UNITED STATES DEPARTMENT OF STATE ORIGINATING FROM THE UNITED STATES EMBASSY OR UNITED STATES CONSULATE IN ISRAEL CONCERNING THE DEFENDANT AND HER FATHER AND OTHERS SIMILARLY CHARGED FROM 1969-1970 [#89] MOOT AND SETTING EVIDENTIARY HEARING FOR OCTOBER 21, 2014 REGARDING DEFENDANT'S RULE 12.2 NOTICE OF EXPERT EVIDENCE OF A MENTAL CONDITION [#42, #43, #45]**

**I.    INTRODUCTION**

On October 22, 2013, Defendant Rasmieh Yousef Odeh was charged with unlawful procurement of naturalization in violation of 18 U.S.C. § 1425(a). Specifically, Title 18 U.S.C. § 1425(a) punishes anyone who, contrary to law, "knowingly procures . . . the naturalization of any person[.]" 18 U.S.C. § 1425(a). Trial is scheduled to commence on November 4, 2014. Presently before the Court are various pretrial motions. A hearing on these matters was conducted on October 2, 2014.

Specifically, the following motions/issues are presently before the Court: (1) Defendant's

Motion to Dismiss Indictment, filed on August 13, 2014; (2) Defendant's Intent to Rely on Expert Evidence of Mental Condition, filed on July 11, 2014; and (3) Defendant's Motion to Produce All Records of the United States Department of State Originating from the United States Embassy or United States Consulate in Israel concerning the Defendant and Her Father and Others Similarly Charged from 1969-1970, filed on August 28, 2014.

For the reasons that follow, the Court will deny Defendant's Motion to Dismiss Indictment and will conduct an evidentiary hearing on whether to allow the proposed expert testimony concerning Defendant's mental condition. The Court also finds that Defendant's Motion to Produce Records moot as they have been produced.

## II.     FACTUAL BACKGROUND

On or about June 4, 2004, Defendant filed a Form N-400 application for naturalization with the United States Citizenship and Immigration Service. The charge herein stems from Defendant's answers to certain questions on her application, specifically the questions include the following:

16.   Have you ever been arrested, cited, or detained by any law enforcement (including INS and military officers) for any reason?
17.   Have you ever been charged with committing any crime or offense?
18.   Have you ever been convicted of a crime or offense?

*          *          *

21.   Have you ever been in jail or prison?

Ind., ¶¶ 23-26. Defendant answered "no" to all of these questions. Defendant also answered in the negative when asked if she had ever lied to any United States Immigration Official to gain entry or admission into the United States. *Id.*, ¶29.

Defendant was interviewed by an immigration officer in Detroit, Michigan on November 3, 2004. Defendant's application was approved and she was sworn in as a United States Citizen in an

oath ceremony performed by another judge of this Court.

The Government contends that Defendant unlawfully procured her citizenship because she provided false statements on her application for naturalization. Specifically, the Government asserts that Defendant was arrested by the Israeli military police for participation in bombing plots executed in early 1969 in Jerusalem–one in a crowded supermarket and the second, the British Consulate. One of the bombs detonated as planned, killing two and injuring many civilians. Defendant was prosecuted in an Israeli military court and convicted of crimes associated with the bombings plots. She claims that her confession to the bombing plots was the result of forty-five days of brutal torture, including electric shock and multiple rapes, perpetrated upon her by the Israeli military. Defendant was sentenced to life imprisonment.

After serving ten years of her sentence, Defendant was released by the Israeli government as part of a prisoner exchange with the group, Popular Front for the Liberation of Palestine ("PFLP"), an organization the Government alleges included Defendant as a member during the bombing plots. According to the Government, the PFLP is one of the original members of the Palestine Liberation Organization and has carried out a long list of terrorist attacks in the international arena as a means to win attention to its cause. The Government further alleges that had Defendant been truthful in answering questions on her naturalization application, her answers would have precluded her from receiving United States citizenship.

### III.   LAW & ANALYSIS

#### A.   Defendant's Motion to Dismiss Indictment

Defendant moves to dismiss the Indictment arguing that it is the product of an illegal investigation into the political activities of the Arab-American Action Network ("AAAN"), an

organization that provides social service and counseling to the Arab community in Chicago. Defendant requests an evidentiary hearing after an opportunity for discovery of the communications between the United States Attorney's Offices in Michigan and Illinois.

Defendant is the Assistant Director of AAAN and she claims that she and other members of AAAN were targeted by the FBI and the United States Attorney's Office for the Northern District of Illinois beginning in 2010. In January of 2010, Brandon Fox, Assistant United States Attorney for the Northern District of Illinois, initiated a request through the office of Internal Affairs, Criminal Division, of the U.S. Department of Justice from the State of Israel for Defendant's records. In July of 2011, the State of Israel provided the Justice Department with several hundred documents relating to Defendant's arrest, conviction and imprisonment by the Israeli military system. After several raids of AAAN's members' homes, and testimony before a grand jury, no charges were ultimately brought against AAAN or any of its members stemming from the 2010 investigation.

Defendant theorizes that the United States Attorney's Office in Illinois requested that the United States Attorney's Office in Michigan handle the prosecution of Defendant to divert attention from the Illinois office's efforts to criminalize the work of the AAAN. Defendant argues that the Indictment must be dismissed because it is the product of the selective use of the criminal law to target protected political speech and work. Conversely, the Government argues that Defendant cannot meet her prima facie burden of selective prosecution, nor the lesser, yet still "rigorous" burden applicable to discovery requests associated with selective prosecution claims. As such, the Government insists Defendant's Motion for Selective Prosecution should be denied without ordering discovery and without an evidentiary hearing.

### 1) Selective Prosecution

In order to establish her claim of selective prosecution, Defendant:

> bears the heavy burden of establishing, at least *prima facie*, (1) that while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, *and* (2) that the government's discriminatory selection of him has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent the exercise of constitutional rights.

*United States v. Bustamante*, 805 F.2d 201, 202 (6th Cir. 1986) (emphasis in original). "Because such claims invade a special province of the Executive–its prosecutorial discretion–we have emphasized that the standard for proving them is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999) (citing *United States v. Armstrong*, 517 U.S. 456, 463-65 (1996)).

Defendant fails to cite to any evidence supporting her claim that the Indictment is the result of an illegal investigation of, and attempt to thwart the political activities of the AAAN. Defendant relies on the fact that no charges were brought against AAAN or its members after the FBI and United States Attorney's Office in Illinois concluded their investigation. However, without more specific details, the Court cannot conclude Defendant has met her burden of establishing her prima facie selective prosecution claim nor entitlement to discovery. *See United States v. Alameh*, 341 F.3d 167, 173-75 (2d Cir. 2003); *United States v. Rivera-Class*, 216 F. Supp.2d 1, 3-4 (D.P.R. 2002).

### 2) Discovery

The Government is correct that the case of *United States v. Armstrong*, 517 U.S. 456 (1996), governs this Court's analysis of discovery requests related to selective-prosecution claims. *United States v. Thorpe*, 471 F.3d 652, 657-65 (6th Cir. 2006). Defendant must make a showing of "*some*

*evidence* tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." *Id.* at 657 (citing *Armstrong*, 517 U.S. at 463) (emphasis in original).

In order to establish the discriminatory effect prong, "some evidence means a credible showing that similarly situated individuals of a different [political organization] were not prosecuted." *Id.* (internal quotation marks omitted); *Rivera-Class*, 216 F. Supp.2d at 3 ("A defendant claiming that he was singled out for prosecution because of his political affiliation must demonstrate that similarly situated individuals of a different political party were not prosecuted."). The discriminatory intent element is demonstrated when the "decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Wayte v. United States*, 470 U.S. 598, 610 (1985) (quoting *Personnel Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)). This may be demonstrated with direct or circumstantial evidence. *Id.*

In *Thorpe*, the United States Court of Appeals for the Sixth Circuit reversed the district court's decision granting the defendant's request for discovery in support of his selective prosecution claim on the basis of race. *Thorpe*, 471 F.3d at 665-66. The defendant in *Thorpe* argued that the Justice Department's implementation of the "Project Safe Neighborhoods," initiative resulted in the selective prosecution on the basis of race within the Eastern District of Michigan. *Id.* at 654-55. The *Thorpe* court reversed the district court's order granting discovery on the defendant's claim of selective prosecution, even though he had presented some evidence by way of statistical reports and data. *Id.* at 655. Here, Defendant's evidence is not only less than that offered in *Thorpe*, rather Defendant's claim is based on conclusory allegations lacking any specific detail. This is insufficient to support discovery. *Alameh*, 341 F.3d at 175; *Rivera-Class*, 216 F. Supp.2d

-6-

at 3.

Based on the foregoing considerations, Defendant has shown no entitlement to discovery related to her claim of selective prosecution, thus her selective prosecution claim likewise fails. *Alameh*, 341 F.3d at 175 ("Since the amount of evidence needed to support a selective prosecution claim on the merits is greater than that which justifies discovery, it follows that, when, as here, discovery was not warranted, defendant's merits claim must also fail."). Defendant's Motion to Dismiss Indictment is DENIED.

### B.   Defendant's Motion to Rely on Expert Evidence of Mental Condition

#### 1.   Mens Rea

Defendant has filed a Rule 12.2(b) Notice of Expert Evidence of Mental Condition arguing that this Court should allow the testimony of Defendant's expert witness as part of her diminished capacity defense because unlawful procurement of citizenship is a specific intent crime. *See* Fed. R. Crim. P. 12.2(b) ("If a defendant intends to introduce expert evidence relating to a mental disease or defect . . . bearing on . . . the issue of guilt[,] . . . the defendant must . . . . notify an attorney for the government . . . ."). Specifically, Defendant seeks to introduce the expert testimony of Mary R. Fabri, a licensed clinical psychologist with expertise in the area of diagnosis and treatment of torture victims. Ms. Fabri will testify to Defendant's diagnosis of Post Traumatic Stress Disorder ("PTSD") resulting from forty-five days of brutal torture while in Israeli military custody in 1969.

Ms. Fabri is expected to offer testimony explaining how Defendant's PTSD impacted her interpretation of the questions and her answers when she prepared her application for United States citizenship. Specifically, Defendant's expert has opined that:

> The psychological wounds of trauma, such as torture, are complex and enduring. Trauma survivors employ different strategies to help them manage the symptoms.

> Avoidance (and sometimes even denial) of thoughts, feelings, and activities associated with the trauma is a symptom and is also an attempt to cope with overwhelming memories of the trauma. It is the intention of the survivor to keep reminders at a distance.
>
>        \*              \*              \*
>
> It is this evaluator's opinion, to a reasonable psychological certainty, that someone with PTSD would cognitively process questions about the past to avoid recalling traumatic experiences, such as torture, that are at the root of one's disorder.

*See* Dkt. No. 45 at 18.

The Government has filed an Objection to the admission of Defendant's proposed expert evidence primarily arguing §1425(a) is a general intent crime, thus evidence of Defendant's purported mental condition is inadmissible.

The United States Court of Appeals for the Sixth Circuit has not addressed whether § 1425(a) is a general intent or specific intent crime. The Sixth Circuit has noted that "[c]ourts generally hold that a *specific intent* crime is one that requires a defendant to do more than *knowingly* act in violation of the law. The defendant must also act with the *purpose* of violating the law. The violation of a *general intent* crime, by contrast requires only that defendant 'intend to do the act that the law proscribes.'" *United States v. Gonyea*, 140 F.3d 649, 653 (6th Cir. 1998) (emphasis supplied). The indictment herein appears to support the Defendant's position that § 1425(a) is a specific intent crime. Specifically, the Government has charged Defendant with "knowingly procur[ing] her naturalization . . . contrary to law, that is, . . . despite her having made each of the material false statements . . . relat[ing] to (A) her criminal history, including her history of imprisonment, as well as to (B) her history of having made false statements *for the purpose of receiving an immigration benefit*." Ind. at p. 14 (emphasis supplied).

Additionally, the United States Court of Appeals for the Seventh Circuit has opined that wilfulness is a required element for a conviction under § 1425(a), specifically holding that:

> [T]here are four independent requirements to the offense of procuring citizenship by misrepresentation : 'the naturalized citizen must have misrepresented or concealed some fact, the misrepresentation or concealment must have been willful, the fact must have been material, and the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment.

*United States v. Latchin,* 554 F.3d 709,713 (citing *Kungys v. United States*, 485 U.S. 759, 767(1988)).

Here, the Government's case is based on the charge that she answered questions related to her conviction and imprisonment falsely *for the purpose of procuring her citizenship*. The charges in the Indictment allege that Defendant knew truthful answers concerning her arrest, conviction and imprisonment would have precluded her from obtaining citizenship. Defendant asserts that if *purpose* to obtain citizenship is not material to establish Count I in the Indictment, then the Government would have charged her with violation of 18 U.S.C. § 1015(a), which punishes anyone who "knowingly makes any false statement . . . in any case . . . relating to . . . to naturalization[.]" *See* 18 U.S. § 1015(a).

Conversely, the Government argues that Defendant is not charged with a specific intent crime and § 1425(a) only requires the knowing act of procuring naturalization. The Government relies on the case of *United States v. Pasillas-Gaytan*, 192 F.3d 864 (9th Cir. 1999) and the unpublished decision of *United States v. Nicaragua-Rodriguez*, No. 98-4019, 1998 WL 738548, *2 (4th Cir. Oct. 2,1998) in support of its position. In *Pasillas-Gaytan*, the Ninth Circuit held that "[b]ecause § 1425(a) requires only 'knowing' conduct, rather than imposing the stricter 'willful' requirement, we hold that [the defendant] did not have to know that procuring naturalization was

a criminal act, although such knowledge would of course suffice to impose criminal liability." *Pasillas-Gaytan*, 192 F.3d at 868; *see also Nicaragua-Rodriguez*, 1998 WL 738548, at *2 (concluding "[t]he plain language of the statute does not require an intent to defraud.").

A thorough reading of *Pasillas-Gaytan* however demonstrates that the Government is incorrect in suggesting that only the knowing act of procuring naturalization is required to sustain a conviction under § 1425(a). The Government fails to acknowledge the *Pasillas-Gaytan* court specifically rejected the same argument raised by the Government herein. *See* Dkt. No. 51 at 6. Specifically, the *Pasillas-Gaytan* court rejected the government's argument that "§ 1425 imposes no *mens rea* requirement other than the requirement of intentionally applying for naturalization." *Pasillas-Gaytan*, 192 F.3d at 868. The *Pasillas-Gaytan* court concluded that "it is not enough that [the defendant] submitted a naturalization application with false information." *Id*. at 869. Rather, the government was required to demonstrate that either the defendant knew he was ineligible for citizenship due to his criminal record or knowingly misrepresented his criminal record in his application or interview." *Id*.; *see also Alameh*, 341 F.3d at 175 (concluding that the § 1425(b) requires more than knowledge of the attempt to obtain naturalization).

Additionally, the Court is not persuaded by the holding in *Nicaragua-Rodriguez*, 1998 WL 738548, an unpublished decision with no analysis supporting its contention that § 1425(a) does not require willfulness. Other courts that have considered sufficiency of the evidence claims for convictions under § 1425(a) have concluded that evidence of false statements made with the intent to unlawfully procure naturalization is sufficient to sustain a conviction under § 1425(a). *See United States v. Chahla*, 752 F.3d 939, 947-48 (11th Cir. 2014) (rejecting the defendants' challenge to their convictions under § 1425(a) because "there was sufficient evidence here that the [defendant]s'

fraudulent statements on their respective Lawful Permanent Resident applications were made with the intent to unlawfully procure naturalization[.]"); *see also United States v. El Sayed*, 470 F. App'x 491, 494 (6th Cir. May 30, 2012) (rejecting the defendant's argument that there was insufficient evidence to support his conviction under § 1425(a) because "the jury rationally could have found beyond a reasonable doubt that [the defendant] knowingly provided false information on his Form N-445 to procure naturalization . . . ."). Accordingly, the Court rejects the Government's contention that § 1425(a) is a general intent crime. The Government will be required to establish at trial that Defendant made false statements on her naturalization application with the purpose of procuring naturalization unlawfully.

Alternatively, the Government argues that even if the Court determines that § 1425(a) is a specific intent crime, Ms. Fabri's testimony is nonetheless inadmissible under the Insanity Defense Reform Act of 1984, 18 U.S.C. § 17 ("IDRA"). However, the Government fails to provide any controlling authority on point for this proposition. For instance, the Government's reliance on *United States v. Willis*, No. 97-4091, 1999 U.S. App. LEXIS 18298 (6th Cir. Jul. 29, 1999) does not support its position that Ms. Fabri's testimony is subject to exclusion notwithstanding § 1425(a) is a specific intent crime. The *Willis* court affirmed the district court's exclusion of psychiatric testimony of mental disease bearing upon the defendant's guilt because the crime at issue was a general intent crime. 1999 U.S. App. LEXIS 18298, at *11-14.

Moreover, the *Willis* court noted that courts have rejected a "categorical bar on expert testimony, at least as it relates to specific intent crimes." 1999 U.S. App. LEXIS 18298, at *15-16. The *Willis* court also stated that "this Court has already decided that diminished capacity evidence, even though its use survives the IDRA, may be used only to negate the mens rea of a specific intent

crime." 1999 U.S. App. LEXIS 18298, at *18 (citing *Gonyea*, 140 F.3d at 650.).  As such, the Court rejects the Government's alternative argument that even if § 1425(a) is a specific intent crime, Ms. Fabri's testimony is nonetheless inadmissible.

### 2.    Admissibility of Expert Evidence of PTSD to Negate Mens Rea

At the hearing, the Government also argued that even if the Court finds § 1425(a) is a specific intent crime, this does not automatically permit the admission of Ms. Fabri's expert testimony.  The Government contends that the Court should conduct an evidentiary hearing to determine whether Ms. Fabri's testimony should be admitted.  Review of federal case law reveals that there appears to be only a handful of courts that have admitted PTSD evidence to negate mens rea.  A review of Ms. Fabri's expert report and the relevant case law reveals that an evidentiary hearing is required to determine whether Ms. Fabri's proposed testimony is admissible

In *United States v. Brown*, the defendant sought to introduce expert psychological evidence that his PTSD negated the mens rea required for conspiracy to possess with intent to distribute and distribution of methamphetamine and use of a firearm in relation to a drug trafficking offense.  326 F.3d 1143, 1144-45 (10th Cir. 2003).  While the Tenth Circuit found that "psychological or psychiatric evidence that negates the essential element of specific intent can be admissible[,]" it nonetheless affirmed the district court's exclusion of this evidence because the defendant "failed to identify a relationship between the proposed testimony and his mens rea." *Id.* at 1145.  The *Brown* court noted that whether expert evidence of this sort is admissible is contingent upon a defendant's clear demonstration that "such evidence would negate intent rather than 'merely present a dangerously confusing theory of defense more akin to justification and excuse.'" *Id*. at 1147 (citing *United States v. Cameron*, 907 F.2d 1051, 1067 (11th Cir. 1990)).    In concluding the defendant

failed to meet his burden showing the "relationship between the specific psychiatric evidence offered and the mens rea at issue in the case[,]" the *Brown* court held:

> Dr. Lindberg's testimony did not address Brown's intent, or lack thereof, for conspiracy to possess with intent to distribute and distribution of methamphetamine. Dr. Lindberg did not opine on how Brown's post-traumatic stress disorder, coupled with chemical dependency, was either related to or tended to negate the requisite specific intent element.

*Id*. at 1148.

Similarly, in *United States v. Montgomery*, No. 07-349, 2007 U.S. Dist. LEXIS 72614 (D. N.J. Sept. 28, 2007), the court concluded that expert evidence that the defendant, a police officer, suffered from PTSD was inadmissible because the evidence did not negate the mens rea required for unlawfully taking property from a fugitive in violation of 18 U.S.C. § 242. The *Montgomery* defendant sought to introduce expert testimony that his "mens rea is not likely to be one of a man stealing a watch for profit or for personal wants, but to send a message." 2007 U.S. Dist. LEXIS 72614, at *3. The *Montgomery* court concluded that, "even if believed, [the evidence] does not negate the willfulness requirement of the first count. The Aumiller Report indicates that, in taking the watch, Defendant was motivated by a desire to send a message. This says nothing about the willfulness of Montgomery's actions." 2007 U.S. Dist. LEXIS 72614, at *9-10.

However, PTSD evidence has been admitted in a case charging the defendant with conspiracy to possess, with intent to distribute cocaine. *United States v. Cebian*, 774 F.2d 446, 446-47 (11th Cir. 1985). In *Cebian,* the defendant introduced evidence that she suffered from PTSD due to the physical and psychological abuse inflicted on her by her husband, who was a cocaine dealer. *Id*. at 447. The defendant was ultimately convicted of the charges even though she was permitted to introduce evidence supporting the defense of battered woman syndrome. *Id.*

-13-

There is also some case law from the state courts demonstrating that PTSD evidence is admissible to negate mens rea. For instance, in *Washington v. Warden*, 133 Wn.2d 559; 947 P.2d 708 (Wash. 2007), the Supreme Court of Washington concluded that the trial court erred in refusing to instruct the jury on the lesser included offense of manslaughter based on the evidence introduced during the trial that the defendant suffered from PTSD from long-standing abuse from her son. *Id.* at 564. A psychiatric expert testified that the defendant had PTSD with dissociative states and that she lacked the mental capacity to form the intent to kill. *Id.* The *Washington* court concluded that "[t]he evidence presented in this case supports an inference that the lesser crime was committed[,]" therefore the jury should have been instructed on the lesser included offense. *Id.*; *see also State v. Bottrell*, 103 Wn. App. 704, 706; 14 P.3d 164 (Wash. App. 2000) (reversing conviction and concluding that the trial court abused its discretion by precluding admission of evidence that the defendant suffered from PTSD which "may have negated the intent necessary for the crime charged[.]")

Here, it appears that Defendant's PTSD diagnosis is admissible to negate the mens rea required for unlawful procurement of naturalization. However, in this Court's view, the expert report does not necessarily amount to a clear demonstration that "such evidence would negate intent rather than 'merely present a dangerously confusing theory of defense more akin to justification and excuse." *Brown*, 326 F.3d at 1147. "[B]ecause psychiatric evidence (1) will only rarely negate specific intent, (2) presents an inherent danger that it will distract the jury from focusing on the actual presence or absence of mens rea, and (3) may easily slide into wider usage that opens up the jury to theories of defense more akin to justification, district courts must examine such psychiatric evidence carefully to ascertain whether it would, if believed, support a legally acceptable theory of

lack of mens rea." *Cameron*, 907 F.2d at 1067.

Defendant intends to introduce expert testimony that "someone with PTSD would cognitively process questions about the past to avoid recalling traumatic experiences, such as torture, that are at the root of one's disorder." This testimony, standing alone, may be insufficient to establish a relationship between Defendant's PTSD and the mens rea for the charge at issue herein. As such, the Court will conduct an evidentiary hearing to ascertain whether Defendant's expert's anticipated testimony will "support a legally acceptable theory of lack of mens rea." *Id.*

### C. Defendant's Motion to Produce Records

In the present motion, Defendant requests that the prosecution obtain from the State Department all documents pertaining to Defendant and her father, Yousef Odeh, and all others similarly charged from 1969-70, originating from the United States Embassy and United States Consulate in Israel. On February 25, 2014, Defendant's counsel made a request under the Freedom of Information Act ("FOIA") for all the documents sought by the instant motion, but has yet to receive any response.

At the hearing on October 2, 2014, Defendant advised the Court that the circumstances had changed since the filing of the instant motion. Defendant has recently received a response from the National Archives and Records Administration concerning the subject records. Defendant further indicated that a researcher is currently reviewing the contents of fifty to seventy-five boxes containing information responsive to Defendant's FOIA request. At the hearing, both parties agreed that the instant motion is moot. Therefore, Defendant's Motion to Produce All Records of the United States Department of State Originating from the United States Embassy or United States Consulate in Israel concerning the Defendant and Her Father and Others Similarly Charged from

1969-1970 is MOOT.

## IV. CONCLUSION

For the foregoing reasons, IT IS ORDERED that Defendant's Motion to Dismiss Indictment [#84] is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Produce All Records of the United States Department of State Originating from the United States Embassy or United States Consulate in Israel concerning the Defendant and Her Father and Others Similarly Charged from 1969-1970 [#89] is MOOT.

IT IS FURTHER ORDERED that the Court will conduct an evidentiary hearing to determine whether Defendant will be allowed to introduce Expert Evidence of Mental Condition [#42, #43, #45]. The evidentiary hearing shall be held on October 21, 2014 at 11:00 a.m.


Dated: October 8, 2014               /s/Gershwin A Drain
                                     GERSHWIN A. DRAIN
                                     UNITED STATES DISTRICT JUDGE